Lawrence Edward **WEAVER**, Plaintiff,

v.

Robert H. **FINCH**, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 17422-3.

United States District Court
W. D. Missouri, W. D.

Nov. 17, 1969.

Albert Copaken and Sylvia Copaken of Copaken & Copaken, Kansas City, Mo., for plaintiff.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for defendant.

BECKER, Chief Judge.

This is a petition under Section 405(g), Title 42, United States Code, for review of a disability determination made by defendant adversely to plaintiff on March 27, 1969. Plaintiff's petition was filed in this Court on May 21, 1969.

Plaintiff originally filed his application for disability benefits with the Social Security Administration on September 6, 1967. The claim was denied by the Social Security Administration on initial consideration on the basis of findings by a Kansas state agency for vocational rehabilitation. Thereafter, at plaintiff's request, a hearing was held before a hearing examiner on November 25, 1968, in which plaintiff and his sister both testified. The hearing examiner rendered a decision unfavorable to plaintiff on December 16, 1968, denying him any disability benefits. The Appeals Council of the Social Security Administration subsequently affirmed the decision of the hearing examiner. Thus, the decision of the hearing examiner stands as the final decision of the Secretary, which is reviewable in this Court under the provisions of Section 405(g), *supra*.

The standards of disability applicable in these proceedings are those set out in Sections 416(i) (1) and 423(d) (1) of Title 42, U.S.C., which read as follows:

"The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;  *  *  *."

## MEDICAL EVIDENCE

The medical evidence of record shows that plaintiff was hospitalized from January 21, 1967, to February 25, 1967, in St. Mary's Hospital in Kansas City, Missouri. (Tr. 63–65) The diagnosis was "depressive reaction". In the case history compiled by that hospital it is reported that plaintiff "was in another hospital where he was on numerous medications but he was severely depressed. He was transferred to the Psychiatric Ward of this hospital for observation and treatment." (Tr. 64) Plaintiff reported at his admission that he had been depressed for "the past two or three months", during which he had been "unable to sleep, food [was] not tasteful and he [became] markedly agitated"; that he had had repeated depressive episodes in the past, which he had "handled with alcohol and he tended to over use alcohol". (Tr. 64) A systematic review re-

vealed a "shrapnel wound, the jaundice years ago and Bright's disease". (Tr. 64) The impression was that of "agitated depression". While in the hospital, plaintiff received 10 or 12 electric shock treatments.

Plaintiff was in the Veterans Administration Hospital in Topeka, Kansas, from August 26, 1967, to March 1968, where the diagnosis was that of a depressive reaction of moderate severity manifested by insomnia, anorexia, constipation, alcoholism, and general agitation. The report of this hospitalization states that the depression was one of moderate severity and that the plaintiff "has maintained his state of anxiety, tremulousness and dejection" throughout his hospitalization. (Tr. 71) The hospital report states that plaintiff had been previously hospitalized in 1955 in Down Town Hospital in Kansas City for a "depression"; that on "September 20, 1965 he was transferred to Topeka VAH where his chief complaint was excessive alcohol consumption"; that plaintiff "was placed on the alcoholic program but was discharged fifteen days later for lack of motivation"; that in "January 1966 he was again admitted to the Down Town Hospital, Kansas City, where he stayed for five weeks and was found to be allergic to Sparine"; that he "was again hospitalized in the same hospital in the summer of 1966 and in December 1966"; and that before this hospitalization, "[a]gain he was hospitalized at the Down Town Hospital in August 1967, ran out of funds, and thus was referred to Topeka VAH." (Tr. 70) The course of treatment recommended in the admission summary was to "guide the patient in a well structured milieu with group therapy and antidepressive type work assignment." (Tr. 72)

Charles D. Glazzard, M.D., a medical consultant with the Kansas Division of Vocational Rehabilitation, signed a report dated October 24, 1967, in which he stated that William Johnson, M.D., of the Topeka VA Hospital, had stated in a telephone conversation "that Mr. Weaver has improved symptomatically. His depression is no longer present. The patient will remain in the hospital probably for a maximum of one to two months. He is considered then ready to return to work. Diagnosis remains neurotic depressive reaction." (Tr. 73)

Partly upon the basis of that telephone conversation and a telephone communication with the VA Hospital on December 21, 1967 (in which it was purportedly reported to the state agency that plaintiff was "responding well to therapy") the state agency recommended denial of plaintiff's disability claim on reconsideration. The recommendation noted that plaintiff had been hospitalized in St. Mary's Hospital from January 21, 1967, through February 25, 1967, with a diagnosis of "depressive reaction" and in the Veterans Administration Hospital in Topeka, Kansas, from August 26, 1967, until at least sometime in December 1967, but stated that "[t]here is no evidence in the record that he was unable to function in a work situation between the two hospitalizations, nor do I feel that I could assume professionally that he was unable to work during the time between hospitalizations since one of the characteristics of a depression is that it can come and go." (Tr. 74)

Another report of the Topeka Veterans Hospital dated August 8, 1968, records that plaintiff was voluntarily admitted "to the treatment and Research Alcoholic Ward on June 26, 1968." (Tr. 76) The plaintiff was "placed on a milieu program consisting of Human Relations Laboratory, occupational therapy, corrective therapy and avocation." (Tr. 76) The plaintiff was reported to have "successfully completed the program and * * * [was] discharged with maximum hospital benefits" on August 9, 1968 to "resume pre-hospital activity, August 12, 1968".

An "employer's statement" on plaintiff's disability claim on his insurance policy with his former employer, Corn Products Company, reported that plaintiff last began and ended work for that

concern on August 23, 1967, and that the reason plaintiff did not return to work after that date was "emotional problems".

A letter of Leo M. Mullen, M.D., "to whom it may concern", dated November 22, 1968, reported that plaintiff had been under treatment since December 30, 1966; that he was hospitalized "for treatment of Cirrhosis of the Liver and Nervous Exhaustion"; that "[w]hile under treatment in the hospital, a severe Anxiety-Depression Syndrome developed"; that in spite of "extensive psychotherapy treatment", plaintiff "has not been able to recover from his illness"; that he "attempted to return to work in August 1967, but was not able to stand the pressure"; that plaintiff continues to be "admitted to the Veterans Hospital from time to time for treatment"; that plaintiff is unable "to perform any compensative work for an indefinite period of time"; and that "he should have permanent and total disability". (Tr. 78)

The Personnel Manager of Corn Products Company reported to a Social Security interviewer that plaintiff worked about 40 hours at Corn Products in April 1967 (when he was obliged to quit because of vomiting and diarrhea) and 14-15 hours prior to August 23, 1967, when he "became disabled"; that "[d]uring the two work attempts in 1967 the [plaintiff] was given the easiest job they could find for him. The [plaintiff] came to the employer and begged them to let him work"; and that the Personnel Manager "feels that he will never be able to work again." (Tr. 62)

In the hearing which was held on November 25, 1968, before a hearing examiner of the Social Security Administration, plaintiff testified that he was 48 years of age; that he had completed the eighth grade; that he had served 3 years in the armed forces from 1942 to 1945 and had received a shrapnel wound during that service; that he had worked for 12 years as a box car checker for Corn Products Company (Tr. 22); that he "was on the payroll when they retired me" (Tr. 22); that after he got out of the Topeka VA Hospital on August 22, 1967, he made an effort to go back to work for Corn Products Company, but that this did not work out and he went to the VA Hospital (Tr. 27); that, after being discharged from hospitalization in March 1968, he again tried to obtain work (Tr. 29); that he was retired by Corn Products Company in June of 1968 (Tr. 29); that he was retired for "disability" (Tr. 30); that, after he was released from the hospital in August 1968, he again looked for work unsuccessfully (Tr. 31); and that Dr. Murphy of the VA Hospital had once recommended to him that he return to work (Tr. 35). Plaintiff's sister testified in the hearing that plaintiff left his last employment because of his nervous condition.

## STANDARDS OF REVIEW

■ Section 405(g), Title 42, U.S.C., provides for judicial review of the final decision of the Secretary of Health, Education and Welfare, in the following terms:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

The decision of the defendant can be affirmed on review by this Court if the following seven standards are met:

(1) the hearing procedures were fair and lawful, Jacobson v. Folsom (S.D.N.Y.) 158 F.Supp. 281, 284;

(2) evidence was received on the material factual issues, Fenix v. Celebrezze (W.D.Mo.) 243 F.Supp. 816;

(3) the findings of fact are supported by substantial evidence, Celebrezze v. Bolas (C.A.8) 316 F.2d 413 [498];

(4) the findings of fact are sufficient to resolve the crucial factual issues, Hayes v. Celebrezze (C.A.5) 311 F.2d 648, 654, as well as the crucial legal issues;

(5) the correct legal standards were applied in determining the ultimate issues, Ferran v. Fleming [Flemming] (C.A.5) 293 F.2d 568, 571;

(6) all regulations of defendant applied in arriving at the decision were lawful and valid as applied in this case, Marion v. Gardner (C.A.8) 359 F.2d 175;

(7) it appears in finding the facts that claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence, the usual burden in administrative proceedings. Sec. 7(c) Ad.Proc.Act; Sec. 556(d), Title 5, U.S.C.; Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 287, 87 S.Ct. 483, 17 L.Ed.2d 362.

On these requirements see Pollard v. Gardner (W.D.Mo.) 267 F.Supp. 890 at 903.

The findings of fact of the hearing examiner were as follows:

"This claimant's only significant impairment is a nervous disorder that has been diagnosed as neurotic depressive reaction. The question to be resolved is whether or not the nervous disorder prevents the claimant from engaging in substantial, gainful activity. The medical listings set out in 20 CFR 1500, Appendix, provides (sic) a guideline for arriving at a determination. A psychoneurotic disorder is considered to be disabling if it results in demonstrable structural changes mediated through psychophysiological channels; produces recurrent and persistent periods of anxiety with tension, apprehension, and interference with concentration and memory; results in depressive affect with insomnia, loss of weight, and suicidal ideation; is manifested by phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; if it produces compulsive, ritualistic behavior; or is manifested by persistent functional disturbance of vision, speech, hearing, or use of a limb with a demonstrable structural or trophic changes. We do not find that the claimant's nervous disorder is of such a severe degree. Although he denies any particular difficulty with alcohol, the record confirms without any question that he has used alcohol excessively in the past and that he was placed on the alcoholic treatment program at the Veterans Administration Hospital in 1967. It is difficult to understand why the claimant does not desire to return to his old job as a checker at the Corn Products Company. It may be, as hinted in the Report of Contact with his employer, that he would not be rehired. The claimant seems to lack motivation to seek and retain gainful employment and that he is fairly well satisfied with the retirement pay he is receiving through an insurance plan with his former employer. The evidence shows without question that he is oriented in all spheres; that his memory is unimpaired; and that he is not well motivated. It was specifically noted in the Veterans Administration report of August 1968 that he could return to his old job. The final report from the Veterans Administration Hospital, dated September 5, 1967, showed diagnoses of depressive reaction and alcoholism. It appears that this claimant is capable of returning to gainful work activity and that work activity would be, indeed, therapeutic.

"The claimant's private physician, Dr. Leo M. Mullen, has expressed the opinion that the claimant could not perform gainful work for the indefinite future. In view of his age, education, and work experience, it is the opinion of this Examiner that the claimant's impairments have not prevented him from engaging in substantial, gainful work activity for a period

of twelve months or more, and that he is presently capable of returning to work as a checker or inspector."

█ It is readily apparent that these findings of fact are not sufficient to resolve the crucial issues. On the issue of whether, previous to August 1968, plaintiff was capable of returning to his former employment, the Hearing Examiner made no express finding. Although the Examiner notes that a hospital report of August 1968 "specifically noted" he could return to work (and this finding was erroneous, as is pointed out hereinafter) and that the plaintiff was "presently" able to return to his former employment, he makes no finding with respect to whether plaintiff, for any period prior to August 1968, was able to return to his former occupation of checker or inspector. Although a finding is made that plaintiff was capable of returning "to gainful work activity", the Examiner is vague on plaintiff's ability to return to his former employment: "It is difficult to understand why the claimant does not desire to return to his old job as a checker at the Corn Products Company. It may be, as hinted in the Report of Contact with his employer, that he would not be rehired." (Tr. 10–11) An express finding on that question, however, is necessary to resolve the crucial issues in this case because a finding that plaintiff was in fact unable to return to his former occupation or employment shifts the burden to the Secretary to show the availability of employment suitable to plaintiff's level of ability. Bethune v. Finch (W.D.Mo.) 302 F.Supp. 425; Nelson v. Gardner (C.A.6) 386 F.2d 92; Carico v. Gardner (C.A.4) 377 F.2d 259; McMullen v. Celebrezze (C.A.9) 335 F.2d 811; Corbin v. Ribicoff (W.D.S.C.) 204 F.Supp. 65; Domann v. Secretary of Health, Education and Welfare (W.D.Mo.) 220 F. Supp. 252; K. Davis, Administrative Law § 16.07. Therefore, a finding should have been made to resolve the crucial question of whether plaintiff was unable to return to his former employment at any date prior to the date of the Hearing Examiner's decision.

█ The case need not be remanded for a finding on this issue, however, because the record is overwhelmingly clear that plaintiff was, for a period of at least twelve months, unable to return to his former employment as a checker or inspector because of his impairment. The plaintiff, his sister, and the personnel manager of the former employer all testified without contradiction that plaintiff left the employ of Corn Products Company because of his nervous condition. Plaintiff and the personnel manager both testified that plaintiff subsequently tried to work in August of 1967 and had been unsuccessful because of his nervous reaction to the job. The record conclusively shows that plaintiff was retired from his job with the Corn Products Company because of his nervous condition, which was denominated a "disability" by that company. All the medical reports of record point to some degree of impairment, and the opinion of plaintiff's personal physician in November 1968 is that he is permanently and totally disabled. There is, on the other hand, absolutely no evidence to support the defendant's conclusion that plaintiff might possibly have returned to work as a checker or inspector with Corn Products Company. There is very little evidence to support any finding that he could return to work in that occupation at all. The Hearing Examiner relies on isolated findings in the VA Hospital report compiled September 5, 1967, in which it was related that plaintiff retained good memory and had no difficulty with subtraction. This evidence is controverted by the same hospital report in which it is noted that plaintiff could not recall particulars in relation to his war experiences and by plaintiff's testimony of his inability to concentrate and accomplish the figuring necessary to the performance of the checker job with Corn Products Company. (Tr. 69, 23–24) Further, evidence of memory retention becomes decidedly insubstantial when compared to the

overwhelming weight of the other evidence of record which shows plaintiff disabled to return to his former occupation.

■■ It may be the position of the Secretary, however, that a clear finding on the issue of plaintiff's ability or inability to return to his former employment is unnecessary because of the Hearing Examiner's finding that the "significant impairment" of plaintiff was not, under a regulation of defendant, severe enough to constitute a medically determinable mental impairment within the meaning of the Act. Regulations of the type relied on by the Hearing Examiner, however, have been held to be "only advisory or suggestive to the effect that, in appraising a psychoneurotic disorder, consideration be given to certain factors * * * [and such regulations do] not state the requirements that must be met if a finding of psychoneurosis entailing inability to work is to be made." Branham v. Gardner (C.A.6) 383 F.2d 614. Further, when the application of such regulations would be inconsistent with the statute or would further restrict its requirements, the regulation is invalid. Marion v. Gardner (C.A.8) 359 F.2d 175; Homm v. Gardner (W.D.Mo.) 267 F.Supp. 926, 927; Lee v. Gardner (W. D.Mo.) 267 F.Supp. 578; Pollard v. Gardner, *supra*; Domann v. Secretary of Health, Education and Welfare, *supra*. In the *Pollard* case it was held that "the defendant cannot by regulation either (1) narrow the breadth of the statute defining disability or (2) create a presumption which substantial credible medical evidence cannot overcome." 267 F.Supp. at 907. Furthermore, the Hearing Examiner erroneously applied the regulation in that he omitted mention of subsection G thereof, which reads as follows:

"Life-long, habitual, and inappropriate patterns of behavior manifested by one of the following:

(1) Seclusiveness and autistic thinking; or

(2) Antisocial or amoral behavior * * *; or

(3) Addictive dependence on alcohol or drugs, with evidence of irreversible organ damage; or

(4) Pathologically inappropriate suspiciousness or hostility * * *"

■ Furthermore, a regulation which is partially evidentiary in nature and imposes a burden of proof greater than a preponderance of the evidence or nullifies proof of the disability under the statutory standard is invalid. Woodby v. Immigration and Naturalization Service, *supra*.

■ The overwhelming medical evidence in this case proves that the plaintiff suffered from "agitated depression." The depression was manifested by many of the symptoms listed under the regulation in subsection G thereof quoted above, which the Hearing Examiner ignored in his application of the regulation. The evidence proved that depression further was manifested by recurrent and persistent periods of anxiety and tension during which plaintiff was apprehensive and could not sustain work, although he tried; that it was accompanied by cirrhosis of the liver and "psychomotor retardation" (Tr. 71); that the depression was at one time of such a degree that it warranted 10 or 12 shock treatments. This proof meets the requirements of the statutes that there be a mental and physical impairment which is medically determinable and demonstrable by recognized diagnostic techniques. It is apparent that several of the symptoms of severity required by the cited regulation were proved to be present in plaintiff at all material times. Thus, if it is the hearing examiner's conclusion that plaintiff met none of the criteria set out in the regulation, his finding on that issue is not supported by substantial evidence in violation of the 3rd standard for review quoted above. If it was the finding of the Hearing Examiner that plaintiff met some, but not all, of the criteria delineated by the regulation, and that all must be met in order to prove

disability, then the regulation as applied exacted stricter requirements than the Act itself, and thus was invalid, as applied, because of violation of the 6th standard for review set out above.

As concluded hereinabove plaintiff sufficiently proved himself to suffer from a medically determinable impairment. He further adduced evidence to show that he was unable to return to his prior employment because of such impairment. Therefore, the failure of the hearing examiner to make any express finding on whether plaintiff might have returned to his former occupation during the period of his disability was a violation of the 4th standard set out above. See K. Davis, Administrative Law § 16.07:

> "In a social security disability case, a decision that the claimant failed to show that he could not follow his usual occupation * * * requires no further findings, although, according to cases * * * an express finding with respect to what the claimant can do and what employment opportunities are open to him is required when the claim is denied but a finding is made that the claimant is unable to engage in his usual occupation."

The error was compounded by the consequent failure of the Hearing Examiner to make any finding or to secure any evidence on the availability of employment suitable to plaintiff's degree of disability in the region in which he lives or in several regions of the country. Section 423(d) (2) (A). In this respect, the examiner relied upon the recommendation of Dr. Murphy that plaintiff find therapeutic work and the fact that one course of treatment during one of plaintiff's hospitalizations was "antidepressive work assignment". When plaintiff had demonstrated his inability to return to his former work, however, it was incumbent upon the defendant to take evidence and reliably find precisely what type of suitable work (e. g., therapeutic and "antidepressive" work) plaintiff was capable of doing and whether it was available to him.

Defendant also relied on his assertion that plaintiff's impairment, even if severe enough to meet the requirements of the Act, did not last 12 months or more as also required by the Social Security Act. But the record shows without any substantial dispute that the impairment prevented plaintiff from gaining or sustaining employment from December 30, 1966, at least until August 1968 when he was released from the Topeka Veterans Hospital for the second time. Defendant points out that, at discharge, plaintiff was warranted by the medical staff of the hospital to be fit to "resume prehospital activity." Defendant interprets this as a "specific notation" that plaintiff could return to his old job. But the notation does not clearly indicate this interpretation, particularly in view of the fact that plaintiff's "prehospital activity" had not been in working at that job, and when the other parts of the record overwhelmingly prove that plaintiff could not return to that job, even though he had by this time tried unsuccessfully to do so. To ignore the greater part of the record and greater weight of the evidence and place the finding of ability to work on the basis of the Hearing Examiner's subjective interpretation of an isolated and ambiguous single remark in a medical report is to violate the third standard set out above. Further, the medical opinion of Leo M. Mullen, M.D., rendered in November 1968, was that plaintiff was still permanently and totally disabled. This medical opinion was consistent with, and supported by, the weight of the other medical evidence of record. While the opinion of medical examiners in respect of disability is not binding on the hearing examiner, the hearing examiner's finding cannot be contrary to such opinion in the absence of substantial evidence to the contrary. Pollard v. Gardner, *supra*. See also Ross v. Gardner (C.A.6) 365 F.2d 554, 559; Celebrezze v. Warren (C.A.10) 339 F.2d 833; Nelms v. Gardner (C.A.6) 386 F.2d 971. Domann v. Secretary of Health, Education and Welfare, *supra*.

The hearing examiner, in finding that plaintiff was not disabled "for a period of twelve months or more" within the terms of Sections 416(i) (1) and 423(d) (1) of Title 42, U.S.C., can only rely solely upon the insubstantial hearsay evidence received by means of telephone communications purportedly with the Topeka VA Hospital whereby it was purportedly reported in October 1967 that plaintiff was no longer depressed. While such hearsay evidence is normally admissible in administrative proceedings, it is fundamental that the decision cannot be based wholly upon insubstantial evidence not admissible under any recognized exception to the hearsay rule. Willapoint Oysters v. Ewing (C.A.9) 174 F.2d 676, cert. den. 338 U.S. 860, 70 S. Ct. 101, 94 L.Ed. 527, reh. den. 339 U.S. 945, 70 S.Ct. 793, 94 L.Ed. 1360; So. Stevedoring Co. v. Voris (C.A.5) 190 F. 2d 275.

Defendant also emphasizes that alcoholism is one of plaintiff's problems and, in its brief in this Court, states that alcoholism itself does not constitute a disability within the meaning of the Social Security Act. The Hearing Examiner stated that "[t]he final report from the Veterans Administration Hospital, dated September 5, 1967, showed diagnoses of depressive reaction and alcoholism." It is thus clear from the defendant's own rendering, therefore, that alcoholism was not the only impairment suffered by plaintiff, so that this is not a case of "alcoholism per se" within the applicability of the cases cited by defendant. Furthermore, the complete diagnosis of September 5, 1967, was as follows:

> "Depressive reaction, endogenous type, chronic, of moderate severity with features of anxiety manifested by insomnia, anorexia, psychomotor retardation, constipation, dejection, alcoholism, lack of interest, restlessness, agitation and self depreciation."

Further, in terms of the regulation applied by defendant, alcoholism may be a symptom of a medically determinable mental or physical impairment. The existence of alcoholism with other medically determinable impairments does not vitiate recovery on account of disability where the plaintiff is otherwise disabled. Lewis v. Celebrezze (C.A.4) 359 F.2d 398.

The hearing examiner stated that the plaintiff "seems to lack motivation to seek and retain employment." This finding is not supported by substantial evidence. The plaintiff testified of his unsuccessful attempts to locate and perform work. His testimony was not controverted in this record. He is, in fact, on the basis of such uncontroverted testimony of unsuccessful attempts to find work, entitled to a finding of disability, under some decisions, on a lesser showing. Walston v. Gardner (C.A.6) 381 F. 2d 580. Claimant's case is much stronger, however, than Walston's case. This case is comparable to Domann v. Secretary of Health, Education and Welfare, *supra*. Even if plaintiff otherwise lacks motivation, however, this lack is regarded by some courts as irrelevant "since lack of motivation is in itself one of the symptoms of the disabling disorder" when a mental impairment is involved, Branham v. Gardner, *supra*, while in other cases lack of motivation may be regarded as an aggravation of the mental impairment, as "functional overlay". See Haskins v. Finch (W.D.Mo.) 307 F.Supp. 1272, and cases therein cited. That any such lack of motivation, if in fact present, was part of plaintiff's depression syndrome rather than a deliberate evasion of work is evidenced by plaintiff's abortive attempt to work in August 1967. Plaintiff has testified, without contradiction, of his attempts to find and sustain work activity between the periods of his hospitalization. His testimony is corroborated in this respect, among others.

The record clearly shows that plaintiff is entitled to disability benefits from six months following the date of the onset of his disability, December 30, 1966, to the date of the administrative hearing herein, November 25, 1968. It is therefore

Ordered that defendant's motion for summary judgment be, and it is hereby, denied. It is further

Ordered and adjudged that plaintiff be, and he is hereby, found to have been unable to engage in any substantial gainful activity by reason of a medically determinable physical and mental impairment which has lasted continually since December 30, 1966, until the date of the administrative hearing herein, namely, November 25, 1968. It is further

Ordered and adjudged that the decision of the Secretary herein denying benefits herein be, and it is hereby, reversed and the Secretary ordered to grant the claim of plaintiff herein.