**John W. GARDNER, Secretary of Health, Education and Welfare, Appellant,**

v.

**Warren G. EARNEST, Appellee.**

**No. 10536.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 6, 1966.

Decided Jan. 10, 1967.

Harvey L. Zuckman, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., and Alan S. Rosenthal, Atty., Dept.

of Justice, and Milton J. Ferguson, U. S. Atty., on brief), for appellant.

Harry F. Thompson, Jr., Huntington, W. Va., for appellee.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

Almost three years after he filed his application for disability insurance benefits, Warren G. Earnest is still in the process of litigating his right to the sought-after payments. His case is here on appeal by the Secretary of Health, Education and Welfare, who urges reversal of the District Court's decision holding that the hearing examiner's adverse finding, adopted by the Secretary, is not supported by substantial evidence. The hearing examiner found that Earnest is not totally disabled and possesses residual skills which can be transferred to other jobs available in the local economy. We affirm the District Court.

█ Earnest, a 46 year old laborer with a fifth grade education and an Intelligence Quotient of 65, worked in the West Virginia coal mines for 25 years, from ages 16 to 41. His various jobs during this period all required a substantial amount of heavy manual labor. He left the mines in March, 1961 when, according to his testimony, he "just couldn't work" any longer. The undisputed medical evidence is that he suffers from second stage silicosis which, he testified, hurts him constantly and causes shortness of breath on any exertion. He has a kidney ailment resulting from a mine injury which, he said, "burns like fire" and keeps him awake at night, and medical evidence also shows that he is suffering from ankylosis of the right knee, ulcers and chronic arthritis. Earnest's wife testified that he has difficulty breathing and is constantly bothered by phlegm deposits, that he complains of back and stomach pains frequently, and that his knee is continuously swollen. Several doctors expressed the opinion that Earnest is disabled from performing any manual labor, while other doctors found him physically unable to pursue any gainful occupation. Considered in connection with his limited education and intelligence and the fact that his sole work experience was in the coal mines at heavy manual labor, the clinical facts, medical opinions and subjective evidence of pain and disability confirm us in the conclusion that realistically Earnest is, as the District Court found, unable to perform any "substantial gainful activity." See Dillon v. Celebrezze, 345 F.2d 753, 755 (4th Cir. 1965); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

The District Court also found a complete lack of factual evidence to support the hearing examiner's conclusion that Earnest possesses residual skills which can be transferred to jobs existing in the local economy. The only evidence introduced by the Secretary at the hearing bearing on this question was the testimony of Miss Hattie Spangler, a vocational counselor in the West Virginia Department of Employment Security. Miss Spangler reviewed the various jobs Earnest performed in the mines and pinpointed the skills she thought inherent in them. Taking account of his present condition, she relied upon her expertise and upon occupations contained in the Dictionary of Occupational Titles and the West Virginia Manufacturing Directory as the basis of her assertion that Earnest "has acquired certain skills that would be applicable and transferrable to other jobs * * * [which] exist in the area."

Referring to Earnest's work in the mines as a roof bolter and as a loader, Miss Spangler noted that both jobs involved the use of a drill. A roof bolter, she testified, "operates a portable pneumatic machine with removable bits to drill holes in roof of mine [sic]," while a loader "blasts and loads coal by hand using both machine and hand drills." Having isolated the skill of drilling, Miss Spangler testified that the job of Single Spindle Drill Press Operator, which she described as entailing "drilling, reaming and sometimes tapping, on metal objects with a drill press," was well within the limits of Earnest's skills and physical capabilities. In this fashion Miss Span-

gler went through several other occupations, reasoning that Earnest could also work as a Radial Drill Press Operator, Oiler or Conveyer Feeder. She also mentioned the jobs of gateman and watchman as particularly suited to Earnest since they involve no manual labor and are primarily sedentary.

Turning to the availability of these jobs in the local economy, Miss Spangler stated that drilling jobs are "found" in all machine shops and that the West Virginia Manufacturing Directory lists many such shops in the state. "There are a few," she went on, "right here in the City of Logan," the site of the hearing, located 25 miles from Earnest's home. Her specific knowledge, however, was limited, and based on a belief that "Guyan Machinery is a fairly good sized plant. * * * I've never been in it but it is located nearby—I believe, in Pineville." She testified that conveyer feeders are employed in "soft drink manufacturing plants [and in] * * * bakeries, and I notice in the West Virginia Directory there are a number right here in the City of Logan." Construction companies, industrial plants and the State Road Commission hire oilers, she continued, and "of course, as far as Watchmen and Gatemen are concerned, they are found in about every area one goes."

■ In this and other circuits, concern has been expressed over the type of showing which the Secretary has found sufficient to warrant a finding that a claimant possesses residual and transferrable skills. Mere conclusory assertions that a claimant is capable of engaging in productive work have been held inadequate when unsupported by specific evidence as to both the type of job to which he is suited and the availability of such employment in his geographic area to a person with his physical impairments, educational level and past work experience. See Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966); Marion v. Gardner, 359 F.2d 175, 181 (8th Cir. 1966); Hodgson v. Celebrezze, 312 F.2d 260, 263 (3d Cir. 1963), 357 F.2d 750 passim (3d Cir. 1966); Henninger v.

Celebrezze, 349 F.2d 808, 819 (6th Cir. 1965); Hall v. Celebrezze, 347 F.2d 937, 938 (4th Cir. 1965) and cases cited therein; Massey v. Celebrezze, 345 F.2d 146, 154–157 (6th Cir. 1965); Celebrezze v. Warren, 339 F.2d 833, 837 (10th Cir. 1964); Butler v. Flemming, 288 F.2d 591, 595 (5th Cir. 1961); Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960). In Cochran v. Celebrezze, 325 F.2d 137 (4th Cir. 1963), we reversed the District Court's affirmance of an administrative denial of benefits where the only specific evidence related to the claimant's former occupations, to which he was unable to return, and the hearing examiner's decision was based upon the bald assertion that the claimant was not disabled from pursuing "numerous other types of * * * work available in the American economy." 325 F.2d at 139. We required that the record be enhanced to reflect "what, if any, kind of work * * * [claimant] is able to do, and whether this kind of work, if any, is available to him." Ibid.; see also Woodson v. Celebrezze, 325 F.2d 479 (4th Cir. 1963).

■ To avoid misunderstanding as to our interpretation of the requirements of the Act, we have on numerous occasions expressly rejected the view that the relevant standard is the abstract "average" man and have focused the inquiry on whether job opportunities exist for persons with the claimant's disabilities and limitations. E. g., Simmons v. Celebrezze, 362 F.2d 753, 755–756 (4th Cir. 1966); Wimmer v. Celebrezze, 355 F.2d 289, 293 (4th Cir. 1966); see also Celebrezze v. Bolas, 316 F.2d 498, 501 (8th Cir. 1963). We have found unpersuasive vocational testimony which purports to demonstrate the availability of these employment opportunities when the expert merely relies on lists of capsule job descriptions appearing in vocational manuals such as the Dictionary of Occupational Titles. E. g., Cyrus v. Celebrezze, 341 F.2d 192, 196–197 (4th Cir. 1965); Ray v. Celebrezze, 340 F.2d 556, 559 (4th Cir. 1965); Hanes v. Celebrezze, 337 F.2d 209, 215 (4th Cir. 1964); See also Miracle v. Celebrezze, 351 F.2d 361, 381–382 (6th Cir. 1965);

Henninger v. Celebrezze, 349 F.2d 808, 817–818 (6th Cir. 1965) ; Massey v. Celebrezze, 345 F.2d 146, 154–157 (6th Cir. 1965) ; Stancavage v. Celebrezze, 323 F.2d 373, 377–378 (3d Cir. 1963). In *Cyrus,* supra, we affirmed the grant of summary judgment for the claimant, noting that "[t]he record is barren of evidence to show that * * * [the vocational counselor] actually checked to determine whether the jobs he cited were available in the vicinity of * * ,* [claimant's] home." 341 F.2d at 196.

More recently, we decided two cases involving the issue of the availability in the claimant's geographical area of vocational opportunities suitable for one in his situation. In Bells v. Celebrezze, 360 F.2d 601 (4th Cir. 1966), the court viewed the vocational expert's testimony as sufficiently detailed, noting that the expert had thoroughly explored employment possibilities throughout the state. In Gardner v. Stewart, 361 F.2d 827 (4th Cir. 1966), however, where the testimony was strikingly similar to that in the case now before us, the court affirmed the District Court's reversal of the Secretary's decision, observing that when the expert is invited to testify in generalities, and to rest his conclusion on unproved assumptions as to what jobs are available without any verified evidence as to the actual existence of these jobs for persons in the claimant's position, "[t]his is little more than asking the expert to read the Dictionary of Occupational Titles aloud into the record. The Secretary has not met his burden." 361 F.2d at 828.[1] Judge Friendly neatly phrased the requirement the Act makes on the Secretary when he wrote that "[m]ere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960).

The standard which emerges from these decisions in our circuit and elsewhere is a practical one: whether there is a reasonably firm basis for thinking that this *particular* claimant can obtain a job within a reasonably circumscribed labor market.[2] While we have condemned exclusive reliance upon the Dictionary

1. The pertinent testimony, which the court deemed insufficient, was as follows:

Dr. Charles Auvenshine, an expert vocational witness, testified as to eleven jobs listed in the Dictionary of Occupational Titles which the claimant was capable of performing. Concerning the existence of these jobs he testified as follows:

"Q. Dr. Auvenshine, do you know anything about the industrial activity in Wyoming County, West Virginia, or any of the surrounding counties as to whether there are any of these jobs existing in that area?

"A. Only of a general nature, in a general sort of way by reference to what I know of Appalachia generally here, and essentially none of these jobs exist in Wyoming County.

"Q. Do you know where such jobs could be found?

"A. Typically such jobs as these would be found in larger cities and some of these would be within, say a hundred miles radius of the home of the claimant in such cities as Charleston, Huntington, Bluefield, Beckley. We would expect to find a goodly number of these represented in these areas, in these cities of this size.

"Q. You don't know of any such jobs in Welsh, do you?

"A. No.

"Q. Do you know of any sedentary jobs that are found within the vicinity of the claimant's home, Wyoming County?

"A. Any sedentary jobs? No, I do not. It would be my impression that they would be even scarcer than the light jobs in this geographical area."

In quoting the above testimony, this circuit made footnote reference to Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965), and noted the Sixth Circuit's disparagement of similar testimony by the same witness. 361 F.2d 828 n. 1.

2. The geographical boundaries of this market are to be determined in accordance with the standards enunciated in our opinion in Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966). There we indicated that the claimant's mobility turns on the "circumstances of the particular case." 355 F.2d at 294. No general rule can satisfactorily adumbrate the precise circumstances that will be controlling in a specific case; the claimant's educational background, physical condition and family responsibilities are all relevant indicia of his geographical mobility. A per-

of Occupational Titles and similar publications, we have indicated that these manuals are useful tools in opening up, by way of suggestion, an assortment of possible job titles to which the claimant may be suited. They may serve as the beginning, but not the end, of the inquiry. There must be a further showing as to which of these occupations are *in fact* available to a person with the claimant's specific characteristics and impairments. Arm-chair speculation, even by vocational experts, is insufficient in the absence of any evidence that employers in the area have hired persons with the claimant's limitations or would be willing to do so. Theoretical expertise untarnished by any field investigations is not enough. While we do not require the Secretary to take the claimant by the hand and lead him to a specific job, the statute is not satisfied without a *factual* showing of job availability for persons of his limited capacity. True, the Act does not entitle a claimant to benefits if work is unavailable because of depressed economic conditions; yet if, as a practical matter, employers would not hire him because of his age, physical impairments and lack of education, he does not lose his benefits merely because even able bodied persons can find no work in the area.

Requiring a common-sense judgment as to the practical employability of an impaired person is a far cry from converting the Social Security Act into an unemployment compensation law. Just as we reject rigid and abstract standards of physical capacity which disregard the fact that a person with the claimant's impairments might not be considered for any substantial employment, so we do not lay down a rule favoring claimants whose capacities, though impaired, enable them to engage in gainful work but who have not made a good faith endeavor to secure work that is available and within their capacities. A man is required to act to help himself in whatever way it is reasonable to expect of a man in his circum-

stances. An employer hires the whole man, not a separate back, hand or eye, and if the claimant is so afflicted as to put any job beyond his reach, he is entitled to benefits if he meets the other requirements of the statute. In all cases there should be a realistic exploration of the totality of the surrounding circumstances.

■ Tested by these criteria, the opinion testimony of the vocational expert is clearly deficient, both as to Earnest's possession of transferable skills and as to the availability of employment suitable for him in the local economy. Miss Spangler assumed, for example, that Earnest's drilling experience in the mines equipped him for employment in a machine shop to operate electric drills. But not all drilling is alike. The crude drilling which Earnest did in the coal mines is qualitatively different from the precision work performed in a machine shop, yet no attempt was made to bridge this gap. Moreover, as a loader, Earnest's primary function was physically to load coal on cars for eventual shipment, and the drilling was merely to dislodge the coal from the mine walls preparatory to loading. He was basically a manual laborer, able to do his work when in the full vigor of health. His experience, especially in light of his borderline mental condition, and his physical infirmities can hardly be said, in the total absence of any proof, to qualify him for a job involving the use of modern machine shop precision drills. Retrainability is a factor only when there exists a sound physical basis for retraining and the acquisition of a new skill is reasonably likely to transform the claimant into an employable individual; but this factor should not be ignored when there is reasonable probability that the claimant may be made substantially productive.

Likewise, with respect to both the machine shop jobs and the other occupations Miss Spangler mentioned, there was no proferred *factual* basis to support her

son in a certain economic and educational category might well be expected to seek employment in a wider area than would

be reasonable for a person in different circumstances.

assertion that these jobs were in fact available for someone with Earnest's impediments. As was said in Cooke v. Celebrezze, 365 F.2d 425 (4th Cir. 1966):

"It is a matter of common knowledge that employers are hesitant to hire the handicapped, particularly if they have no special skills. The prospective employer's fear of absenteeism, the possibility of higher workmen's compensation premiums, and uncertainty whether such an employee will be able to perform his work satisfactorily, are factors militating against the abstract judgment that jobs are available to this man." Id. at 428; see e. g., Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966); Bridges v. Gardner, 368 F.2d 86, 90–91 (5th Cir. 1966); Hilton v. Celebrezze, 367 F.2d 481, 485n–5 (4th Cir. 1966); Williams v. Celebrezze, 359 F.2d 950, 952–953 (4th Cir. 1966); Marion v. Gardner, 359 F.2d 175, 181 (8th Cir. 1966); Thomas v. Celebrezze, 331 F.2d 541, 546 (4th Cir. 1964); Ferran v. Flemming, 293 F.2d 568, 571 (5th Cir. 1961), ("[i]f there is no market for the services he is able to render then he is truly disabled within the meaning of the statute").

These observations are as pertinent here as they were in the context in which they were made, of a miner with an eighth grade education and ι steadily degenerating back condition. In the present case Miss Spangler failed to undertake any field investigation in Earnest's geographical vicinity, and her judgment, based on an abstract generalization, is open to serious question when she testifies that she "believes" there is a "good sized" machine shop in Logan, or "nearby—I believe." Surmise is not enough; it must be validated by further exploration. We are impelled to the same conclusion as the District Court, namely, that Miss Spangler and, in turn, the Secretary placed undue reliance on the Dictionary of Occupational Titles and the West Virginia Manufacturing Directory. Applying the legal standard of the Act to the record as a whole, as we are required by Universal Camera Corp. v. N. L. R. B.,

340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), we "cannot conscientiously find that the evidence supporting * * * [the Secretary's] decision is substantial * * *." Id. at 488, 71 S.Ct. at 465.

Since we agree with the District Judge that Earnest is disabled within the meaning of the Act and that the Secretary's conclusion that he has transferrable residual capacity finds no substantial support in the record, we affirm the District Court. Benefits having been so long delayed while the claim was being processed and litigated, the Secretary should expedite payments upon receipt of the mandate of this court.

Affirmed.