**Charles M. GRIZZLE, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary Health, Education & Welfare, Defendant.**

**Civ. A. No. 68–C–72–A.**

United States District Court
W. D. Virginia,
Abingdon Division.
March 12, 1969.

791

Glen M. Williams, Jonesville, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This is an action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The decision holds that Charles M. Grizzle, the claimant, is not entitled to a period of disability or to disability insurance benefits on the basis of his application of September 27, 1966. The decision, rendered by a hearing examiner on April 16, 1968, became final when the Appeals Council denied the claimant's request for review on July 12, 1968.

The claimant filed his application for disability insurance benefits on September 27, 1966, with an alleged disabling back condition. The application was denied and the claimant was so notified by letter dated September 26, 1967. Upon reconsideration the application was again denied and the claimant was so notified by letter dated November 4, 1967. Being dissatisfied with these adverse determinations, the claimant requested a hearing.

■■ A hearing was conducted in Bristol, Tennessee on March 8, 1968. The claimant, represented by an attorney, appeared and testified at this hearing. Other witnesses who appeared and testified were Mrs. Doris Ann Grizzle, claimant's wife, Mr. Loren Lee Ervin, claimant's neighbor and Mr. Clyde R. Smith, a vocational expert. Various records and medical reports were introduced into evidence. On April 16, 1968, the hearing examiner held that in light of the entire evidence of record that the claimant had failed to show by competent medical evidence that he was suffering from an impairment, or impairments, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application was effective. Because the claimant meets the special earnings requirements at least through March 31, 1971, the decision is necessarily limited as to the date it was rendered as to a finding of disability or non-disability.

The pertinent facts are these. The claimant was born May 28, 1936. He is married and has four dependent children. Possessor of a fourth grade education, he can barely read or write. Claimant's work experience has been in the saw-mills, turning logs and carrying lumber from the saw. He has also worked as a laborer in construction work and as an operator of bulldozers and other large earth-moving equipment. The claimant last worked for the Appalachian Construction Company in September, 1966, but had to stop work because he could not walk and because he had extreme pain in his back and legs. The claimant stated that he had been suffering back trouble for about a year

prior to stopping work, and had worn a brace to relieve the pain in his back.

The claimant's medical difficulties relate primarily to a back condition. Prior to stopping work, the claimant was treated by Dr. Robert L. Strang who fitted the claimant with a back brace to relieve the pain in the back which was radiating down the left leg. In a letter dated September 27, 1966, Dr. Strang stated that x-rays revealed a spondylolisthesis at L5–S1. The doctor recommended that the claimant be considered for a fusion of his lower back area. Dr. Strang opined that if the surgery was performed, "he [the claimant] will not be able to do heavy work of any type from six to eight months. He would be in the hospital approximately two weeks."

The claimant was examined by Dr. Merritt B. Shobe, an office associate of Dr. Strang. In a letter dated July 18, 1967, Dr. Shobe stated that x-rays still showed spondylolisthesis and that it was their opinion "that this patient, at his age, should either return to work and if he is unable to do this, then he should have the surgery which, if successful, would relieve him." Dr. Shobe further stated that prognosis without surgery is poor while the prognosis with successful surgery is good and that the claimant should be able to work doing almost any type of activity without difficulty. The doctor noted that the back brace, having given relief, was an indication that surgery would be helpful.

The claimant was seen for psychiatric evaluation on April 7, 1967. Dr. Marshall D. Hogan, found the claimant to be totally illiterate, only able to sign his name. The claimant is below average intelligence and has a slight speech impediment. The doctor stated that the claimant evidences good judgment, has a memory intact for both recent and remote events and is oriented as to time, place, persons and situation. As to the claimant's refusal to have surgery performed on his back, the doctor found that the claimant did not evidence any unreasonable or pathological fear of the surgery. The doctor said that he felt that the claimant was not deliberately malingering and that his decision about the operation is not an unhealthy one. The doctor continued that the decision may or may not be correct but that it was arrived at within the limited mental means at the patient's disposal and was done so with sincerity and honesty.

A report by Doctor Virginia G. King, a doctor of chiropractic, states that the claimant requested treatment for pains in the lower back and left hip and leg. The claimant also complained of headaches, pain in his neck and arms, a nervous stomach and vomiting. The report notes that the claimant's last job, operating a bulldozer tractor, was aggravating and worsened his condition. The report states that the claimant was taking chiropractic treatment and although some improvement was noted, the claimant was still unable to work.

On June 26, 1967, the claimant was examined by Doctor Waverly S. Green who offered the following final diagnosis (1) Anxiety state (2) Pathology of the lumbo-sacral spine and (3) Hypertrophic gastritis and probably duodenal ulcer. The following recommendations were made (1) Ulcer diet consisting of bland food with in between feedings (2) Antacids such as Maalox, etc., Antispasmodics such as Donnatal or Probanthine and (3) Orthopedic consultation.

The medical evidence of record was submitted to Dr. Richard A. Montgomery, a surgical consultant to the Bureau of Disability Insurance. After noting that x-rays revealed spondylolisthesis in the lower back area which could be the basis of significant low back pain particularly aggravated by heavy lifting, excessive bending, heavy pushing and pulling or repeated lurching motions such as those occasioned in the operation of a bulldozer, the report states that the evidence does not indicate an impairment that would prevent "light or possibly medium work activity which did not require excessive bending or other excessive strain on the lower back." The report does state that the applicant's im-

pairment is one which could preclude his usual work on a sustained basis. It is also stated that with reasonable effort treatment would be expected to restore his ability to resume his usual type work. The word "treatment" is not explained, but it appears to include the recommended surgery which had been suggested by other doctors.

There is also evidence in the record that the claimant, after quitting work as a bulldozer operator because of the pain, attempted to secure lighter work. The claimant testified that he tried to secure a job in a cloth-making factory, but was turned down because of his back condition. The record also contains a statement from the Tennessee Eastman Company stating that the claimant was rejected for employment due to a lumbar spine defect, a defect discovered by x-ray during the medical examination. The claimant testified concerning his attempts to secure lighter work, "I applied for something. It didn't matter or anything so long as it was light work."

The hearing examiner in denying the claimant's application cited the following regulation promulgated by the Secretary of the Department of Health, Education and Welfare.

An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity. 20 C.F.R. 404.1502(g).

It is the hearing examiner's conclusion that claimant's impairment is remedial since a spinal fusion would correct the claimant's present condition. The claimant states that he will not have the spinal fusion surgery performed because the doctors cannot guarantee the results of the operation and from this the hearing examiner concludes that "The claimant's insistence upon the guarantee of a 100 percent cure appears to be an unreasonable reason to refuse to have the recommended surgery."

"It is common knowledge that spinal-fusion operations are often dangerous and entail much pain and suffering. What kind of surgical operation entailing what danger to life, and pain, must an applicant undergo at the behest of a surgeon who does not suggest any certainty of cure or remedy?" Ratliff v. Celebrezze, 338 F.2d 978, 11 A.L.R.2d 1124 (6th Cir. 1964). The record indicates two reasons why the claimant refuses to have the surgery (1) fear that it might leave him paralyzed or that his back would be stiff after the operation, and (2) that it is not certain of success (See Disability Determination Forms). From a review of the entire record it is clear that a very painful back condition does exist which prevents the claimant from returning to any of his previous types of employment because of the rather arduous and heavy nature involved. It also seems clear that a spinal fusion, *if successful*, would greatly relieve the back condition. However, the many medical reports give no indication as to the chances of success if the operation is performed; the reports say nothing of danger; they are silent as to the pain involved in such an operation. Rather the reports simply recommend an operation and forecast the expectancies if the operation is successful. The record also includes a psychiatric evaluation that states that the claimant expresses no "unreasonable or pathologic fear" of the operation, but rather that he has reached a decision that is not an "unhealthy" one, but rather that "was most thoughtfully arrived at within the limited mental means at the patient's disposal and was done so with sincerity and honesty * * *" In Martin v. Ribicoff, 195 F.Supp. 761, 772 (E.D.Tenn. 1961), the court said of the plaintiff's refusal to submit to spinal surgery:

Plaintiff's position in the matter may be different from the majority of patients in like situations, but this Court believes that there is a sizeable minority that holds to a like view. There are some who will not undergo major operations. Others will under-

go major operations only as a last resort to prevent death.

The Social Security Act is humanitarian legislation and we do not believe that it requires a sincere person who has great fear to submit to an operation in an effort to diminish his impairment in order to have a disability period established.

Neither do we believe that an applicant needs to expose himself to dangerous and painful surgery in an effort to diminish his impairments to have a disability period established. As the regulations suggest the impairment must be such that it can be diminished "with reasonable effort and safety to [the applicant]." 20 C.F.R. 404.1502(g). From a review of the record we are unable to determine whether the operation in this particular case will be dangerous or painful. There is also no indication as to the chances of having a successful operation performed. We consider these factors material in determining whether in this particular case the impairment is remediable. See Purdham v. Celebrezze, 349 F.2d 828 (4th Cir. 1965). Thus we hold that the decision of the Secretary is unsupported by substantial evidence as to his finding that the refusal of the claimant to have the spinal fusion operation is an unreasonable one and bars recovery of benefits under the Social Security Act.

The hearing examiner has also held, alternatively, that "Even if the claimant refuses to have the surgery, there are still occupations in which he could engage which are less arduous and demanding than heavy equipment operating." Having made this statement the hearing examiner talks in generalities that could as well be applied to any social security claim as the one being considered. At no point does the hearing examiner cite any one specific type job that the claimant is capable of performing, but rather is content to speak in terms such as "with his capabilities," or "light or sedentary in nature." The hearing examiner's decision reads:

Even if the claimant refuses to have the surgery, there are still occupations in which he could engage which are less arduous and demanding than heavy equipment operating. The vocational expert has testified that there are several occupations in which the claimant could engage, that these jobs are well within his capabilities, and are either light or sedentary in nature. The claimant's own description of his daily activities, such as driving his automobile, walking around home, and watching television, would indicate that he has the residual capacity to engage in either light or sedentary jobs which are available in significant quantities in the community and in the regional and national economy. Although the claimant is illiterate, he is a very young man, only 31 years of age, and with reasonable effort and diligence on his part, it appears that his symptoms could be alleviated to the point where he could return to useful industrial activity.

The Secretary has the burden to show, in a case involving a disability benefits claimant who is no longer capable of performing the previous types of work he did in the past, that there are other kinds of work *actually* available for which a person with claimant's impairment may be considered reasonably suited. Boyd v. Gardner, 377 F.2d 718 (4th Cir. 1967). The "[m]ere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available". Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960). The Court of Appeals for the Fourth Circuit has articulated a standard for determining whether the Secretary has met his burden in showing the availability of jobs. In Gardner v. Earnest, 371 F.2d 606, 609 (4th Cir. 1967), the court said:

The standard which emerges from these decisions in our circuit and elsewhere is a practical one: whether there is a reasonably firm basis for thinking that this *particular* claimant can obtain a job within a reasonably

circumscribed labor market. While we have condemned exclusive reliance upon the Dictionary of Occupational Titles and similar publications, we have indicated that these manuals are useful tools in opening up, by way of suggestion, an assortment of possible job titles to which the claimant may be suited. They may serve as the beginning, but not the end, of the inquiry. There must be a further showing as to which of these occupations are *in fact* available to a person with the claimant's specific characteristics and impairments. Arm-chair speculation, even by vocational experts, is insufficient in the absence of any evidence that employers in the area have hired persons with the claimant's limitations or would be willing to do so. Theoretical expertise untarnished by any field investigations is not enough. While we do not require the Secretary to take the claimant by the hand and lead him to a specific job, the statute is not satisfied without a *factual* showing of job availability for persons of his limited capacity. True, the Act does not entitle a claimant to benefits if work is unavailable because of depressed economic conditions; yet if, as a practical matter, employers would not hire him because of his age, physical impairments and lack of education, he does not lose his benefits merely because even able bodied persons can find no work in the area.

■ When the evidence of job availability in the present case is measured against the requirements set forth in Gardner v. Earnest, it is definitely insufficient to allow a finding that the claimant can engage in substantial gainful activity. Mr. Clyde R. Smith, a vocational expert, testified as to the employability of the claimant. Mr. Smith testified that he was from West Tennessee and that his information as to job categories and availability was from labor market reports, employment services and "things of this nature." Several jobs of a lighter nature were mentioned, such as a bottle inspector, bench work, wrapping boxes, machine watcher, or gluing and staining in furniture manufacturing companies. The vocational expert testified that "it would need to be a job where a physical examination or educational background wasn't required, because no matter what sort of a back injury it is, the employers are scared to death of it, and insurance won't underwrite it, so it would have to be with this limitation, that is another limiting factor." Mr. Smith testified that jobs were available in the "Tri-City area", an area accessible to the claimant. However, on cross examination it is quite clear that the vocational expert, who is from Western Tennessee, had never made a field investigation concerning the areas of East Tennessee or Southwest Virginia, the area encompassing the "Tri-City area." The vocational expert testified.

Q. Now let's get back to some of the specific jobs that you mentioned. Now the hypothetical questions asked you by the Hearing Examiner, you mentioned for example, the de-burring job at Rayethon. Now do you know whether or not Rayethon for example requires a medical?

A. No, but my guess, if I were guessing, and you might guess it no better than anybody else, is they probably do.

Q. And assuming then that they did, then you would have to rule that job out in this man's case based on what you say, is that correct?

A. I wouldn't rule it out but I'd think that the likelihood would be pretty slim.

Q. Now with regard to any of these jobs that you have mentioned, bench jobs and general jobs that you have mentioned bottle inspection. Are you prepared to say here today any of those places specifically in the Tri-City areas where we are seated here today, that do not require a physical examination?

A. I'm not prepared to say that they do not require a physical examination. I think that they probably—that the chances of anyone getting a job would be considerably lessened if a physical examination were required, due to the fact that employers and insurance companies are scared to death with people with a back injury. For that matter let me say this, let me say this though, this doesn't in any way lessen whether or not the individual in the hypothetical situation would be physically capable of doing this sort of job. In other words, my obligation is not to find a job or to get a job, but merely to say that based on my experience and based on the information provided me, and the hypothetical question, these are the jobs that are available, and these are the things that an individual under those circumstances could or could not do, and then I have done it.

Q. All right, sir. Are you assuming that certain plants in the area do require—are you in a position to say that there is any job that is actually available to this man in this area and, if so, would you specify what it is?

A. Now let me understand what you were saying, so that I can answer you responsibly. You are saying that assuming that what has been said here subjectively is in fact so, and that assuming that companies in this area do require a physical examination, is there any occupation which an individual with this sort of impairment or impairments could get?

Q. That you actually know about and is actually available?

A. That they could get?

Q. Yes?

A. No, but if what has been said here is so, no.

Q. And you are not able to specify actually any place in the area to your own specific knowledge that would not require a physical examination?

A. That's right.

Q. And are you saying, assuming that is true, I mean assuming that what is said here is true, and assuming further that you know of nothing of any job where a physical examination would not be required, based on those two factors, that you could not designate any particular job in the area that this man could do?

A. Based on the way you stated it, yes.

Q. Are you familiar with the J. P. Stevens Company firm?

A. No, I'm actually from West Tennessee and my information has been hurriedly in the sense of the way I'm depending on labor market reports and employment service and things of this nature, so until this day I never heard of J. P. Stevens.

Q. Then I take it from your answer to that question, you have not done an actual on the spot check yourself other than surveys you have read. You are really not familiar with East Tennessee and the Southwest Virginia area?

A. No. This is not required that I go to an individual employer and say, what do you have available and would you hire an individual who has a history of whatever it might happen to be.

We can only conclude that from the foregoing that it is "arm chair" speculation untarnished by any field investigation. There has been no factual showing that this particular claimant can "obtain a job within a reasonably circumscribed labor market" Gardner v. Earnest, 371 F.2d 606, 609 (4th Cir. 1967) with his restricted education and physical impairment. To the contrary the record before this court contains evi-

dence that the claimant was twice rejected for employment because of his back condition.

■ The hearing examiner has made no finding that shows with particularity the residual capacity the claimant possesses, the types of jobs he could perform or the availability of these jobs to the claimant in the local economy. "Mere conclusory assertions that a claimant is capable of engaging in productive work have been held inadequate when unsupported by specific evidence as to both the type of job to which he is suited and the availability of such employment in his geographic area to a person with his physical impairments, education level and past work experience." Gardner v. Earnest, 371 F.2d 606, 608 (4th Cir. 1967); Cochran v. Celebrezze, 325 F.2d 137 (4th Cir. 1963). As exemplary of the conclusory statements by the hearing examiner, we quote the following from his decision:

> The claimant's own description of his daily activities, such as driving his automobile, walking around home, and watching television, would indicate that he has the residual capacity to engage in either light or sedentary jobs which are available in significant quantities in the community and in the regional and national economy.

Without further discussion as to the general statements concerning job availability; we examine the claimant's own description of his daily activities from the testimony at the hearing: (1) As to driving his car, the claimant testified that he drove not over three or four miles a week to the grocery store that is a quarter of a mile away from his home; (2) As to watching television the claimant testified as to how he spent his time, "well, I lay around and watch television" and; (3) As to walking around the house the claimant testified that he doesn't walk much because of his back. From the above testimony gleaned from the hearing, the hearing examiner determined that the claimant had residual capacities to perform light or sedentary jobs. We think the following information from the hearing is pertinent and should have been given weight by the hearing examiner: that the claimant's pain was so great that he couldn't mount his bulldozer tractor; that the pain prevented the claimant from walking comfortably; that the claimant takes "aspirin and Anacin and stuff" to kill the pain; that the claimant wears a back brace; that the pain in claimant's back and legs keeps him from sleeping comfortably; that the claimant has tried to secure lighter work and has been unsuccessful; that the claimant cannot bend, stoop, squat or stand for any length of time; that there is pain when the claimant sits or moves; that the claimant's wife testified as to claimant's manifestations of pain and of the claimant's attempt to secure work after his back condition became serious; that the claimant's neighbor testified that he moved "like somebody might be ninety-year old" and that the claimant had "always been a hard worker." The foregoing is not an exhaustive list of the factors covered in the hearing, but simply set forth as indicative of those things which the hearing examiner did not consider, or if he did consider them, then it is not apparent from his generally worded decision. We think the general conclusions set forth by the hearing examiner find no support in the records. The factors cited by the hearing examiner, as indicative of the claimant's residual capacities, are taken out of context and as such are a distortion of the testimony as a whole. The Secretary may not disregard the claimant's subjective complaints, Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), nor do we think he may select particular subjective complaints to support a general and conclusory holding, when to do so would distort the record as a whole.

For the foregoing reasons, this court is unable to make a fair and reasonable determination of whether the claimant is able to engage in a substantial gainful activity. Therefore, the court is of the opinion that further evidence should be

developed with regard to the remedial nature of the claimant's impairment concerning the spinal fusion surgery, or in the alternative should the Secretary decide, further evidence should be developed with regard to how the claimant's impairments affect his capacity to work. If after thorough consideration the Secretary should find that the claimant's impairment is not remediable, but that the claimant has the capacity for work, then such finding should be supported by specific findings as to the nature of work available to a man of his age, experience and training, and with his mental and physical impairments. Teeter v. Flemming, 270 F.2d 871, 77 A.L.R.2d 636 (7th Cir. 1959). Upon reconsideration the Secretary should keep in mind that the theoretical ability to work is not enough if no opportunity for it is available. Aaron v. Fleming, 168 F. Supp. 291 (M.D.Ala.1958).

Accordingly the Secretary's decision is reversed and the motion for summary judgment is denied. The case is remanded for further proceedings not inconsistent with this opinion.