**Edna V. BUDDS, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of the Department of Health, Education and Welfare, Defendant.**

**No. 18131–1.**

United States District Court,
W. D. Missouri, W. D.

June 19, 1970.

Albert Copaken, Kansas City, Mo., for plaintiff.

Bert C. Hurn, U. S. Dist. Atty., Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

Plaintiff seeks review of a final decision of the Secretary of Health, Education and Welfare, denying her application for widow's disability insurance benefits. The Hearing Examiner denied the claim; the Appeals Counsel affirmed. The case pends on defendant's motion for summary judgment. Under Section 405(g), Title 42, United States Code, we must affirm if there is substantial evidence to support the Secretary's decision.

The principles and standards applicable to this case have been stated in numerous recent cases decided by this Court. See the reported cases of Pollard v. Gardner (W.D.Mo., 1967) 267 F. Supp. 890; Underwood v. Gardner (W.D. Mo., 1967) 267 F.Supp. 802; Homm v. Gardner (W.D.Mo., 1967) 267 F.Supp. 926; Lee v. Gardner (W.D.Mo., 1967) 267 F.Supp. 578; Weaver v. Finch (W.D. Mo., 1969) 306 F.Supp. 1185; and Haskins v. Finch (W.D.Mo., 1969) 307 F. Supp. 1272, for examples.

We therefore need only to state the factual circumstances of this case and to apply the law consistent with the principles and standards stated in the cases cited. We shall, of course, in the course of this memorandum opinion, state the reasons supporting our conclusion that plaintiff is entitled to appropriate relief under the facts as we find them.

This memorandum opinion shall constitute our findings of fact and conclusions of law as required by Rule 52(a) of the Rules of Civil Procedure.

## II.

The Hearing Examiner's Decision stated:

In this connection, it is noted that the medical evidence of record includes a medical judgment by a physician employed by the State agency that the claimant's impairments are not medically the equivalent of an impairment listed in the said Appendix (Exhibits 14 and 16). [Tr. 12]

The question presented to this Court is whether there is substantial medical or other evidence to support the conclusions of the State agency physicians (who did not examine the plaintiff) and Disability Examiner that plaintiff's impairments are not medically the equivalent of an impairment listed in the Appendix to Title 20, C.F.R. § 404 (Subpart. P).

The reviewing teams offer different but not inconsistent grounds for their conclusion. Exhibit 14, pages 83–84 of the transcript, is the report of the first reviewing team. The "bases for determination" are the reports of Dr. Kendall (a physician consulting for the Social Security Administration) and plaintiff's treating physician, Dr. Jack Gunn (erroneously referred to as Dr. Jack Graham by the Reviewing Team on page 84).

The reviewing team concluded that plaintiff's impairment does not equal or parallel the severity in the medical listings and that therefore she is not disabled within the meaning of the Act. As we shall discuss in greater detail at a later point, both Dr. Kendall's and Dr. Gunn's reports concluded that plaintiff was disabled.

The second basis for the Hearing Examiner's conclusion was the report of a second reviewing team (Exhibit 16, Tr. 87–88). The second reviewing team accepted but revised the first reviewing team's decision, stating:

The examining Internist finds no contra-indication to surgery for the hiatus hernia and there does not appear to be any other problem of sufficient severity to be disabling.

As will be discussed later, whether the hiatus hernia could be mended by surgery has no relevancy in these proceedings unless plaintiff willfully refused to follow a prescribed treatment which required her to undergo surgery.

## III.

We turn first to the question of whether there is substantial evidence for the conclusion that plaintiff is not disabled. We recognize that under Regulation § 404.1526 a physician's statement that an individual is disabled is not conclusive. However, "the weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments." [§ 404.1526, T. 20, Chapter III]

Furthermore, the determination of whether an individual's impairment is medically equivalent to an impairment listed in the Appendix to Subpart P "shall be based on medical evidence demonstrated by medical judgment furnished by one or more diagnostic techniques, including a medically acceptable clinical and laboratory physicians [sic] designated by the Secretary, relative to the question of medical equivalence."

The only medical evidence in this case is from Dr. Kendall and Dr. Gunn.

Dr. Kendall's letter of February 25, 1969 to Disability Examiner Thomas M. O'Hara states:

I examined Mrs. Budd because of abdominal pain five years duration. She has bitter regurgitation, sternal and epigastric pain radiating to the back when stooping or moving around. She has difficulty swallowing at times. she was found to have a hiatus hernia on x-ray but her doctor recommended no surgery because of her sensitivity to many drugs and other reasons. She cannot perform her housework without becoming short of breath, having pain, vomiting occasionally, approximately three times per week. She states that

she lives on milk but some relief is afforded by Milpath. Her husband died December, 1968 and her symptoms have been worse since then.

\* \* \* \* \* \*

In summary, the patient has a symptomatic hiatus hernia which apparently prevents her from doing even her housework. Ordinarily, surgical correction of such a hernia would be recommended, but her private physician believes that this would be contraindicated in her case. I see no contraindication to such a procedure. At present she is disabled because of her hernia and anxiety reaction, partly related to the death of her husband. [Tr. 93].

The first reviewing team obviously completely ignored Dr. Kendall's explicitly stated opinion that "at present she [plaintiff] is disabled because of her hernia and anxiety reaction" to such an extent that plaintiff could not even "perform her housework without becoming short of breath, having pain, vomiting occasionally, approximately three times per week". It would obviously be impossible for a person in such a physical condition to engage in any gainful activity.[1]

Dr. Gunn's letter of September 11, 1969 also recites that Mrs. Budds has a hiatus hernia which causes indigestion and gas with any stooping or bending; that the condition interferes with normal housework; that she has chronic bronchitis and occasional episodes of asthma; that she suffers from frequent dizzi-

ness; that she has osteoarthritis of the spine; and that she is unable to work.

The consideration given by the Hearing Examiner to "the medical judgment [of] a physician employed by the State agency" as contained in Exhibits 14 and 16 [Tr. 12] presents the question of whether either of the doctors on the respective teams actually concurred in the conclusions stated on the continuation sheets attached to the form on which their signatures appear. We have no real doubt that some doctor in fact signed his name to the form which constituted the first page of Exhibits 14 and 16 [Tr. 83 and 87]. But we entertain a real concern as to the authorship of the continuation sheets attached to those two exhibits [Tr. 84 and 88]. The continuation sheets are written in legal, rather than medical, language. Indeed, if the unidentified doctors (their respective signatures are illegible) did, in fact, write the continuation sheets, they would have done so in apparent violation of 20 C.F.R. § 404.-1526 which explicitly states that "the function of deciding whether or not an individual is under a disability is the responsibility of the Secretary."

We are also concerned about the inaccurate and erroneous statements contained on the two continuation sheets, regardless of who may have written them, because such administrative work indicates a lack of concern that the rights of claimants be fairly determined on the basis of the actual factual circumstances presented.

1. A Report of Disability Interview dated January 6, 1969 indicated that the plaintiff has been unable to work since 1960 and that she "can't stoop, or lift, or carry" (Exhibit 10, Tr. 76). A Report of Continuing Disability Interview dated May 13, 1969 indicated that plaintiff was no better, that she slept on a bed which had to be elevated six inches at the head, and that she could not even make her own bed without stopping to rest (Exhibit 15, Tr. 85). A letter from Mr. and Mrs. Jack Brown stated that they had known plaintiff for over eight years; that she could not stoop or bend without getting dreadfully ill; and that she had been in poor health since they had known her (Exhibit 24, Tr. 102). A similar letter from Mr. and Mrs. Ted Neeley, who had known claimant for four or five years, was introduced in evidence as Exhibit 25, Tr. 103. Mrs. Bailey, the friend who accompanied plaintiff to the hearing, fully corroborated plaintiff's testimony as to her physical condition.

All evidence and testimony from lay persons was consistent with Dr. Kendall's opinion that plaintiff was disabled because of her hernia and anxiety reaction. There was no evidence or testimony to the contrary.

■ Our review of this and many other appeals from the other decisions of the Secretary suggests that administrative procedures and practices which have apparently grown up over the years sometimes tend to place a premium on the filling out of forms to the detriment of appropriate and independent careful consideration of many questions of substance which require other than hurried routine processing. Cohen v. Perales, 412 F.2d 44, reh. denied 416 F.2d 1250 (5th Cir., 1969), frowned upon particular practices in regard to how particular hearing examiners have had doctors "ride circuit" with them. See 412 F.2d at 55. We believe that the practice of attributing ˙weight to a scrawled signature on a printed form (Form OA–D831) of an unidentified doctor who does not state any reason in support of his opinion is also an impermissible practice.[2]

It is clear that the Hearing Examiner assumed that the unidentified doctors whose names were scrawled on Exhibits 14 and 16 had in fact written the continuation sheets attached to those reports and that such reports could be considered as substantial evidence.[3] It is also apparent that the Hearing Examiner considered the letters of Dr. Kendall and Dr. Gunn to be substantial evidence and read those reports as though they had in fact expressed differing opinions in regard to the relevant question presented by plaintiff's claim. See Tr. 12–13.

The listing in the Appendix is obviously not exhaustive of all the ills which can disable man. Section 404.1506(b) recognizes this. The Hearing Examiner, however, apparently decided that Mrs. Budds' claim somehow fell under Section 5.00, headed "Digestive System". The Hearing Examiner then referred to the apparent absence of interference with nutrition, abscesses, etc., to conclude that the requisite impairment was not present,

despite the undisputed findings of the only two medical opinions that plaintiff was in fact disabled. The Hearing Examiner's decision assumes the validity and applicability of 20 C.F.R. §§ 404.-1501–404.1539, and the Listings contained in the Appendix thereto. The Hearing Examiner assumed that a hiatus hernia was in fact listed under Section 5.00 of the Appendix, even though that condition was nowhere mentioned therein.

■ We find and conclude that there is an absence of substantial evidence that plaintiff's impairments are not the equivalent of listed impairments. To rule otherwise would raise the question of whether the exclusivity of the listed impairments narrows the statutory standard of impairments "sufficient to preclude an individual from engaging in any gainful activity." (Title 42, United States Code, § 423(d) (2) (B)). See Pollard v. Gardner, *supra*; Underwood v. Gardner, *supra*; and Homm v. Gardner, *supra*.

IV.

There is reference to the possibility of correction of the hernia by surgery both in the second review team's comments [Tr. 88] and the Hearing Examiner's decision. While the Hearing Examiner made a passing and somewhat inaccurate reference to Dr. Gunn's reasons why plaintiff was unable to go through with any major surgery at the present time (see and compare Dr. Gunn's statements in Exhibits 19, Tr. 97 and Exhibit 27, Tr. 108, with the Hearing Examiner's partial paraphrase on page 7 [Tr. 12] of his decision), he nevertheless concluded that it was "the opinion of the Hearing Examiner that the claimant does not appear so emotional that she could not undergo surgery for correction of this condition (as stated by Dr. Gunn) and the Hearing Examiner would have to agree with the opinion of Dr. Kendall

---

2. In denying the petition for rehearing in Cohen v. Perales, *supra*, the Fifth Circuit stated:

   It is not possible for a case of this kind to be decided through a stereotyped procedure that resembles the working of a computer. [416 F.2d at 1251]

3. See statement of Hearing Examiner quoted on page 1050 in the text of this opinion.

that appears to be no reason why claimant could not have this condition corrected by surgery" [Tr. 12–13]. Although the rationale of the Hearing Examiner's decision is not explicitly stated, it is clearly apparent that he justified the denial of plaintiff's claim by an application of 20 C.F.R. § 404.1507.

Perhaps the Hearing Examiner was misled by the second reviewing team's inaccurate and clearly erroneous statement that "there is nothing in the file to indicate [that plaintiff's] doctor has recommended against surgery." It is surprising that such a mistake could be made in light of what "the examining Internist," Dr. Kendall, explicitly stated in his report of February 24, 1969. In that report, Exhibit 18, Tr. 93, Dr. Kendall, speaking only generally about surgery for a hiatus hernia, stated that "ordinarily surgical correction of such a hernia would be recommended, but her private physician believes that this would be contra-indicated in her case" [Tr. 93]. Dr. Kendall detailed that "her doctor recommended no surgery because of her sensitivity to many drugs and other reasons" [Tr. 93].[4] Dr. Kendall's letter to Mr. O'Hara did contain a sentence in his summary which stated that "I see no contra-indication to such a procedure." But Dr. Kendall did not in any way purport to qualify his explicitly stated opinion that plaintiff "at the present time * *

is disabled because of her hernia and anxiety reaction" [Exh. 18, Tr. 93].

There is grave doubt that the Hearing Examiner had before him any substantial evidence upon which to base his finding that plaintiff's condition could in fact be corrected by surgery. See Cohen v. Perales, *supra*, and the cases there cited in regard to whether Dr. Kendall's letter may properly be considered "substantial evidence" upon which a decision of the Secretary could be based.[5]

There is also grave doubt whether the Hearing Examiner's seizure upon the isolated issue upon which he based his decision without affording plaintiff notice and an opportunity to prepare and present evidence on that issue destroyed the essential fairness of the hearing itself. See Cyrus v. Celebrezze (4th Cir., 1965) 341 F.2d 192, 195. The notice of the specific issues on which findings would be made and conclusions would be reached did not suggest that the question of whether plaintiff should undergo surgery would be presented.[6] Indeed, the only mention ever made of corrective surgery before the Hearing Examiner wrote his decision was the passing reference contained in Dr. Kendall's letter of February 25, 1969 [Tr. 93] and the inaccurate statement contained in the denial of plaintiff's request for reconsideration which erroneously stated on June 25, 1969, that there was "Nothing in [plaintiff's] file to indicate [that] her

4. Dr. Jack Gunn subsequently advised the defendant that plaintiff was "allergic to penicillin, procaine, and is sensitive to barbiturates, codeine, and antihistamines" [Exh. 27, Tr. 108]. Defendant was also advised by Dr. Gunn on September 8, 1969 that although plaintiff "has been advised to have a surgical repair of her hiatus hernia [she] at the present time is emotionally unable to go through with any major surgery" [Exh. 19, Tr. 97].

5. Hill v. Fleming (W.D.Pa., 1958) 169 F.Supp. 240, is one of the cases upon which the court in Cohen v. Perales relied. In part V of this opinion we shall direct attention to Kohrs v. Flemming (8th Cir., 1959) 272 F.2d 731. *Kohrs* also placed reliance on Judge Marsh's excellent opinion in Hill v. Fleming. In

light of the number of courts which have indicated agreement with that case, it is somewhat surprising that the Secretary has not promulgated changes in the administrative procedures which apparently have been continued over a long period of time.

6. The Notice of Hearing dated October 7, 1969 stated only that "The specific issues on which findings will be made and conclusions will be reached are whether you have the required status under the law, and if so, as of what dates; the nature and extent of your impairments, and whether your impairment has lasted or can be expected to last for at least 12 months; your ability to engage in gainful activity since your impairment began, and when your impairment began."

doctor has recommended against surgery" [Tr. 88].[7]

Comments about corrective surgery become relevant only if 20 C.F.R. § 404.-1507 is properly invoked and applied. The pertinent part of § 404.1507 provides:

> An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. However, an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability. Willful failure does not exist if there is justifiable cause for failure to follow such treatment.

■ Assuming, but not deciding that 20 C.F.R. § 404.1507 *is a valid regulation*, see Pollard v. Gardner, *supra*; Underwood v. Gardner, *supra*, and Homm v. Gardner, *supra*, it is quite clear that a denial of a disability claim based upon an alleged failure to follow a "prescribed treatment" which could be expected to restore one's ability to work requires a number of factual findings which, under appropriate general principles, must be supported by substantial evidence. Certainly, the Secretary cannot deny entitlement to this disabled widow under 20 C.F.R. § 404.1507 unless some treatment had in fact been "prescribed" within the meaning of the regulation. There is no evidence whatsoever that plaintiff was ever given any prescribed treatment. Nor was there any evidence that plaintiff was ever advised that anyone would ever attempt to construe Dr. Kendall's passing remark that he saw no contra-indication to surgery as being some sort of a prescription of treatment which she would forego at her peril.

20 C.F.R. § 404.1507 emphasizes that such regulation shall not be utilized unless the failure of a claimant to follow a particularly prescribed treatment is both (1) willful and (2) without justifiable cause. And, as the last sentence of that regulation explicitly states, a finding of "willful failure" cannot properly be found to exist "if there is justifiable cause for failure to follow" the particular treatment prescribed.

The undisputed factual circumstances of this case, assuming that the doctors' letters and reports may be considered as substantial evidence, establish that plaintiff's treating physician was of the opinion that plaintiff, for an apparently valid medical reason, simply cannot undergo major surgery at the present time. Dr. Kendall in no way suggested that Dr. Gunn's opinion is without scientific foundation or that it was based on some sort of collusion to defraud the government. Indeed, all Dr. Kendall said in his letter was that *"ordinarily,* surgical correction of such a hernia would be recommended * * *" [Tr. 93]. He added, apparently by way of explanation, that "her private physician believes this would be contra-indicated in her case * * * because of her sensitivity to many drugs and other reasons" [Tr. 93].

The single sentence in Dr. Kendall's summary to the effect that "I see no contra-indication to such a procedure" [Tr. 93] cannot properly be said to afford an appropriate basis for a finding either that (1) some course of treatment, namely, surgery, was in fact prescribed for plaintiff; or (2) that plaintiff willfully

---

7. Apparently no one except the Hearing Examiner thought the corrective surgery question was a significant question because no real effort was ever made by the defendant to have either Dr. Kendall or Dr. Gunn state a particular and definitive opinion on that question. The added information received from Dr. Gunn in September, 1969, which spelled out in some detail the reasons which supported his opinion that plaintiff should and could not undergo major surgery at the present time, was received quite accidentally and not in response to any specific inquiry made by the defendant.

failed to follow an assumed prescribed course of treatment; or (3) that the advice of her treating physician was not in fact a justifiable cause for any assumed failure to follow an assumed prescribed treatment.

The Hearing Examiner's statement in his decision that it was his opinion "that the claimant does not appear so emotional that she could not undergo surgery for correction of this condition (as stated by Dr. Gunn) and that [he] would have to agree with the opinion of Dr. Kendall that appears to be no reason why claimant could not have this condition corrected by surgery" [Tr. 13] does not reflect the resolution of any conflict in the testimony of the expert witnesses.

██ Entirely apart from the fact that neither Dr. Kendall nor Dr. Gunn were called as witnesses, it cannot fairly be concluded that either doctor was conscious of the legal implication which the Hearing Examiner chose to place on what the doctors had said in their respective letters. But, even if it could be said that the Hearing Examiner had in fact resolved a conflict in the substantial evidence, defendant's position is not materially changed because the record in this case clearly reflects that there simply is no substantial evidence to support any of the requisite findings necessary to permit a proper application of 20 C.F.R. § 404.1507 as a basis for a denial of plaintiff's claim. No other ground of denial is suggested or apparent. It follows that plaintiff is entitled to relief.

## V.

We see no necessity for the citation of a large number of cases to support our conclusions. Consistent, however, with judicial custom, we direct attention to a few of the cases consistent with our stated conclusions.

In Kohrs v. Flemming (8th Cir., 1959) 272 F.2d 731, a letter from a neurological surgeon stated that if pain suffered by the claimant became unbearable it could be relieved by a cordotomy. The Court of Appeals noted that "in effect, the referee held that because the plaintiff is unwilling to submit to such an operation she may not be considered 'disabled'" (272 F.2d at 735). The Court of Appeals concluded that such a finding was not supported by substantial evidence and further determined that all the credible evidence established plaintiff's disability.

It is important to note that in the Kohrs case, as in this case, all of the medical opinion and other evidence indicated that plaintiff was disabled and that such opinion and evidence "was in no wise contradicted, either by other medical testimony, opinion or fact" (272 F.2d at 736). Under such circumstances, the Court of Appeals concluded that the following rule, stated in Hill v. Fleming (W.D.Pa., 1958) 169 F.Supp. 240, 245, was applicable:

> Expert opinions on such issues are admissible evidence to be considered by the fact finder, but when they are not repudiated in any respect by substantial evidence to the contrary, an adverse decision on these ultimate facts should be set aside as based on "suspicion" and "speculation."

Colwell v. Gardner (6th Cir., 1967) 386 F.2d 56, was another case in which, as is true in this case, "the only conclusion that might explain the Hearing Examiner's decision is that he held that appellant was obliged to submit to the surgical operation mentioned by Dr. Massie, and that, until such surgical operation was found unavailing, appellant could not be considered disabled" (386 F.2d at 69). Dr. Massie in that case, as Dr. Kendall in this, saw the plaintiff only once and "the only evidence that an operation could be performed was the signed statement" of the doctor (386 F.2d at 69).

The Sixth Circuit, as have we, indicated doubt whether the statement of Dr. Massie could even be considered as "probative evidence," but proceeding on the basis that it could be so considered, concluded that the principles enunciated in Ratliff v. Celebrezze (6th Cir., 1964) 338 F.2d 978, were applicable. Both

cases determined that a disability claim could not properly be denied under a regulation substantially similar to present 20 C.F.R. § 404.1507 if the claimant's refusal to undergo surgery was reasonable. In *Colwell* the court concluded that it would be unreasonable to hold that a disability claimant may be forced to disregard medical advice against an operation or be deprived of disability benefits, "and such a decision would not be sustained by substantial evidence; and, if that was the basis of the Hearing Examiner's decision, it was not sustained by substantial evidence" (386 F.2d at 70).

Grizzle v. Cohen (W.D.Va., 1969) 297 F.Supp. 790, involved still another case in which a Hearing Examiner accepted a statement in a doctor's letter which suggested that the disability claimant should undergo surgery. The hearing examiner relied upon former regulation 20 C.F.R. § 404.1502(g). He concluded that the recommended operation would correct the claimant's condition and that claimant's refusal to undergo the operation was unreasonable. The claimant refused surgery in that case because he was afraid that a spinal fusion might leave him paralyzed and because there was no certainty of success. In holding that fear was not an unreasonable ground for refusal, the court relied upon Martin v. Ribicoff (E.D.Tenn., 1961) 195 F.Supp. 761, 772, which held that:

> The Social Security Act is humanitarian legislation and we do not believe that it requires a sincere person who has great fear to submit to an operation in an effort to diminish his impairment in order to have a disability period established. [297 F.Supp. at 794].

In *Grizzle*, as in this case, there was no substantial evidence as to the chances of success of the operation. Accordingly, it was determined that the decision of the Secretary "is unsupported by substantial evidence" with respect to his finding that the refusal of the claimant to have the "spinal fusion operation is an unreasonable one and bars recovery of benefits under the Social Security Act." (297 F. Supp. at 794).

Both the letter and the spirit of 20 C.F.R. § 404.1507 was violated in this case. Assuming, but not deciding, that such regulation is valid, our finding and conclusion that the decision of the Secretary is not supported by substantial evidence is consistent with the rationale of the cases cited.

### VI.

For the reasons stated, it is hereby

Ordered that defendant's motion for summary judgment should be, and the same is hereby, denied. It is further

Ordered that the decision of the Secretary should be and the same is hereby reversed. It is further

Ordered that this case should be, and the same is, hereby remanded with the direction that plaintiff's claim be allowed.